UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| ARIANE JEANINE DUBY,<br><div align="right">Plaintiff,</div><br>v.<br><br>TODD VERNON BARKLEY et al.,<br><div align="right">Defendants.</div> | Case No. 23-11864<br>Honorable Shalina D. Kumar<br>Magistrate Judge David R. Grand |

**OPINION AND ORDER GRANTING MOTION TO TRANSFER VENUE
(ECF NO. 11)**

Plaintiff Ariane Jeanine Duby sued defendants Hillsdale County Sheriff's Office (the "HCSO"), former HCSO deputy Todd Vernon Barkley, HCSO Sheriff Scott B. Hodshire, and the County of Hillsdale (the "County"), alleging that Barkley abused his authority while working as an HCSO deputy to sexually prey on Duby in violation of federal and state law. ECF No. 1.

Defendants move to transfer venue of this case to the Western District of Michigan (the "Western District"). ECF No. 11. The motion is fully briefed and does not require a hearing for decision. ECF Nos. 11, 13, 14; *see* E.D. Mich. LR 7.1(f). For the reasons below, the Court grants the motion.

## I.    Background

Duby resides in Hillsdale County, Michigan, which is located in the Western District. ECF No. 1, PageID.1; 28 U.S.C.S. § 102. Barkley worked as an HCSO deputy sheriff in the County and allegedly abused his authority to sexually prey on Duby and other women in the community. *Id.* at PageID.4-7.

According to Duby, Barkley learned of her drug addiction when he responded to a civil disturbance in July 2020. *Id.* at PageID.4. He afterwards arrested and transported her to the local jail and while on duty allegedly started gaining leverage over Duby by contacting or temporarily detaining Duby and her personal network. *Id.* at PageID.4, 6-7. Barkley put his alleged plans to prey on Duby in action when Duby was charged with drug possession in February 2021 and Barkley allegedly arranged to have her undergo drug rehabilitation at a facility in Kentucky. *Id.* at PageID.5. As Duby underwent rehabilitation there, Barkley allegedly drove to the facility, used his police badge to release Duby, and had sex with her at a hotel. *Id.* at PageID.5, 6. Duby alleges Barkley would likewise sexually prey on her when she returned home, convincing her that their relationship would help her in her criminal and other legal matters. *Id.* at PageID.7.

Barkley allegedly preyed on other vulnerable women in the County after promising to help them in their criminal matters. *Id.* at PageID.4, 7. Duby describes an incident where another woman suffering from drug addiction expected Barkley's help to avoid criminal charges after he arrested and had sex with her. *Id.* at PageID.6. According to Duby, for such women, Barkley would routinely speak to other deputies and employees of the local court system to seek favorable terms for them. *Id.* at PageID.7. The HCSO allegedly received complaints about Barkley's sexual misconduct but did nothing about it. *Id.* at PageID.4, 7.

After the Michigan Attorney General's office criminally charged Barkley for his alleged sexual misconduct, Duby filed suit against Barkley, Hodshire, the HCSO, and the County. *Id.* at PageID.8. She brings claims under 42 U.S.C. § 1983 for violations of various constitutional rights, as well as for municipal liability stemming from unconstitutional policies, practices, and customs. ECF No. 1. She also brings state law claims for negligence, assault and battery, intentional infliction of emotional distress, malicious prosecution, and civil rights violations under M.C.L. 37.2101 *et seq. Id.*

## II.    Standard of Review

Defendants request a transfer of venue from the Eastern District of Michigan ("this District") to the Western District pursuant to 28 U.S.C. § 1404(a). Under § 1404(a), the Court "may transfer any civil action to any other district or division where it might have been brought" for "the convenience of parties and witnesses, in the interest of justice." *Id.*

The Court has "wide discretion to transfer an action under 28 U.S.C. § 1404(a) in order to prevent waste of time, energy and money, and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Grand Kensington, LLC v Burger King Corp.*, 81 F. Supp. 2d 834, 836 (E.D. Mich. 2000); *see also Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (stating § 1404(a)'s intent is to allow discretionary transfer based on 'individualized, case-by-case consideration of convenience and fairness.'"). The moving party has the burden to demonstrate by a preponderance that, upon a balance of factors, "fairness and practicality strongly favor the forum to which transfer is sought." *Rowe v Chrysler Corp.*, 520 F. Supp. 15, 16 (E.D. Mich. 1981).

Before granting a transfer to a different district court, the Court must first determine whether the action could have been brought in the proposed transferee district. *Domino's Pizza PMC v. Caribbean Rhino*, 453 F. Supp.

2d 998, 1007 (E.D. Mich. 2006). The parties do not dispute that this case

could have been brought in the Western District. Even so, the Court must

then balance a number of factors on a motion to transfer: (1) the

convenience of the parties, (2) the convenience of the witnesses, (3) the

ease of access to sources of proof, (4) the location of operative facts, (5)

the ability to compel unwilling witnesses, (6) the plaintiff's choice of forum,

and (7) the interests of justice. *Means v. U.S. Conf. of Catholic Bishops*,

836 F.3d 643, 651 (6th Cir. 2016). "A transfer is not appropriate if the result

is simply to shift the inconvenience from one party to another." *Audi AG v*

*Izumi*, 204 F. Supp. 2d 1014, 1023 (E.D. Mich. 2002).

## III.   Analysis

Regarding the first factor, the convenience of the parties, Barkley

resides in Wayne County, which is located in this District. *See* ECF No. 1,

PageID.2; ECF No. 9, PageID.45. It is undisputed that Duby and all other

defendants reside in Hillsdale County, which is located in the Western

District. The Western District appears on balance to be the most

convenient forum for the parties.

Duby contends that the County borders this District, implying that in

reality neither forum is more convenient than the other. As matters stand,

the parties must travel to this District's Flint courthouse. But if the Court

should transfer the case, the parties would have to travel to a courthouse in Western District's Southern Division, a courthouse which may be located in Grand Rapids, Lansing, or Kalamazoo. *See* 28 U.S.C.S. § 102; W.D. Mich. LCivR 3.2. The parties traveling from Hillsdale County to any of those Western District courthouses would have to travel a similar or likely shorter distance than they must if the case remains in this District. As such, transferring this case to the Western District would be more convenient to Duby and nearly all defendants. The convenience of the parties, therefore, favors transfer.

The second factor, the convenience of the witnesses, is one of the most important factors in the venue transfer analysis. *Steelcase, Inc. v. Mar-Mol Co.*, 210 F. Supp. 2d 920, 939 (W.D. Mich. 2002). Typically, the moving party must identify key witnesses through admissible evidence. *See Flagstar Bank, FSB v. Gulfstream Bus. Bank, Inc.*, No. 2:13-CV-12136, 2013 WL 6017977, at *4 (E.D. Mich. Nov. 13, 2013). But where none of the parties present such evidence, the Court may consider the witnesses' convenience based on the allegations in the complaint. *See Means v. U.S. Conf. of Catholic Bishops*, No. 13-14916, 2015 U.S. Dist. LEXIS 199247, at *11-12 (E.D. Mich. Mar. 31, 2015) (finding witness convenience favored transfer where "neither party has identified one witness that would be called

to trial" but "it seems [based on the complaint] that MHP personnel who treated Plaintiff and allegedly carried out the Directives, in the Western District, would be needed to establish a cause of action"), *aff'd*, 836 F.3d 643 (6th Cir. 2016).

Here, although the parties do not offer admissible evidence identifying key witnesses, the complaint indicates that nearly all the witnesses—County court employees, Duby's family members and friends, HCSO employees, and victimized women in Duby's community—reside in the Western District. ECF No. 1, PageID.7; *see id.* at PageID.4-8. It indicates no non-party witnesses with any connection to this District. Further, Duby's claims rest on Barkley's extensive alleged misconduct as a HCSO deputy within the Western District, misconduct allegedly victimizing "vulnerable, drug addicted [female witnesses] subjected to criminal charges" also within the Western District. *Id.* at PageID.10. Such witnesses dealing with their own personal adversity would likely find traveling to Flint for someone else's legal matters to be very inconvenient. It appears that transfer to the Western District would most practically serve these witnesses' convenience, in addition to the convenience of County employee-witnesses and Duby's personal contact-witnesses. Accordingly, the convenience of the witnesses favors transfer.

As to the third factor, accessibility to sources of proof, defendants argue that any court or jail records necessary to prove Duby's claims are located in the Western District. Duby suggests that transferring documents electronically is so easy and inexpensive as to not warrant a venue transfer. The Court agrees that in general electronic discovery makes sources of proof rather easily accessible. But Duby fails to indicate how electronic discovery in this case makes county court and jail records as easily accessible as they would be if litigation were to take place in this District, instead of the Western District where such documents are located. This factor, therefore, slightly favors transfer. *See Means*, 2015 U.S. Dist. LEXIS 199247, at *13.

As to the fourth factor, the location of operative facts, the complaint shows that most substantial events or omissions giving rise to this action occurred in the Western District. The complaint indicates that Barkley allegedly initiated a relationship with Duby, visited her family, pulled over her acquaintances, caused her to undergo drug abuse rehabilitation while isolated in Kentucky, had sex with her, and temporarily detained Duby and other women—all in the Western District. The complaint further shows that the HCSO's hiring, appointment, and re-appointment of Barkley as deputy, HCSO's alleged ratification of Barkley's misconduct, and the effectuation of

defendants' allegedly unconstitutional policies, practices, and customs all occurred in the Western District. There are no allegations intimating any connection of the operative facts to this District. And despite Duby's unsubstantiated claims found only in her brief that she had sex with Barkley within this District, most of the key facts occurred in the Western District. Accordingly, the location of operative facts strongly favors transfer.

As to the fifth factor, the ability to compel unwilling witnesses, nearly all non-party witnesses reside or are employed in the County, which borders this District. As such, the non-party witnesses reside or are employed within 100 miles of this District such that the Court has the same ability to compel any unwilling witnesses as a court in the Western District. *See* Fed. R. Civ. P. 45(c)(1)(A). This factor is neutral with regard to transfer.

As to the sixth factor, Duby's chosen forum, a court generally "should give deference to a plaintiff's choice of venue." *Grand Kensington*, 81 F. Supp. 2d at 836. "When a defendant moves to change the forum, he must overcome the presumption that the plaintiff has chosen the proper forum." *Id.* However, "where the plaintiff does not reside in the chosen forum[,] courts assign less weight to the plaintiff's choice." *Means*, 836 F.3d at 651 (citation omitted).

Because Duby chose this District as her case's forum yet does not reside in it, the Court gives less weight to her choice. Indeed, the Court assigns little weight to Duby's choice—she resides in the Western District, the proposed transferee district where nearly all defendants, witnesses, and sources of proof are. Further, Duby does not demonstrate that a substantial part of the events or omissions giving rise the case occurred in this District. Her complaint, however, shows that most of the events or omissions relevant to the case occurred in the Western District. Despite Duby's unsubstantiated allegations in her brief, the case's only connection to this District is that Barkley currently resides within it. As other courts have concluded, such a tenuous connection cannot adequately support retaining a case on a motion to transfer. *See, e.g.*, *Lapine v. Atterberry*, No. 06-12634, 2006 WL 2583121, at *1 (E.D. Mich. Sept. 5, 2006); *Anadigics, Inc. v. Raytheon Co.*, 903 F. Supp. 615, 617 (S.D.N.Y. 1995). At the very least, this factor is neutral with regard to transfer. *See Means*, 2015 U.S. Dist. LEXIS 199247, at *16 (finding choice of forum favored transfer where plaintiff did not reside in chosen forum and substantial events giving rise to action did not occur in chosen forum).

As to the last factor, the interests of justice, defendants indicate that due to the tenuous connection the case has with this District, Duby's choice

of forum is an effort at forum shopping, which would counsel against transfer. *See J3 Eng'g Grp., LLC v. Mack Indus. of Kalamazoo, LLC*, 390 F. Supp. 3d 946, 952 (E.D. Wis. 2019). Duby counters that she "has a strong distrust of the local court" and government and that transfer would "undermine her belief in the court system and justice." ECF No. 13, PageID.144. At core, Duby hopes for a more fair and therefore favorable litigation environment within this District, as opposed to any state or federal court located in the Western District—that constitutes forum shopping. *Cf. Hatch v. Barrett*, No. 20-CV-1791, 2023 WL 2391109, at *1 (E.D. Wis. Mar. 7, 2023) (finding as forum shopping desire for "a different judge who will view things differently").

The interest of justice in reality is about the "public's interest in conserving scarce judicial resources" and comprises factors such as "trying related litigation together, ensuring a speedy trial, and having the trial before a judge who is familiar with the applicable law." *Jaramillo v. DineEquity, Inc.*, 664 F. Supp. 2d 908, 915 (N.D. Ill. 2009) (citation omitted). None of these factors counsel for or against transfer. The case is still at an early stage. Relatively few judicial resources have been spent on it. And because the Western District has an interest in deciding local controversies, a court there should decide this case, not this Court. *See id.*

Page **11** of **12**

at 917 (considering heavily weighed factor of local desire to adjudicate matters that affect locale directly). Accordingly, this factor strongly favors of transfer.

In sum, the parties do not dispute that this case could have been brought in the Western District, and after balancing all relevant factors, the Court finds that defendants have carried their burden to show that fairness and practicality strongly favor transferring this case to that district.

## IV.    Conclusion

For the reasons above, defendants' motion to transfer venue (ECF No. 11) is **GRANTED**. The Clerk of the Court shall **TRANSFER** this case to the Western District of Michigan, and this case shall be designated as **CLOSED** for statistical purposes.

<u>s/ Shalina D. Kumar</u>
SHALINA D. KUMAR
Dated: May 30, 2024                                   United States District Judge